QUARTUS J. SMITH *vs.* FERDINAND A. LANGEWALD.

Hampden. Sept. 22. — Oct. 24, 1885. FIELD, C. ALLEN, & GARDNER, JJ., absent.

The owner of land, having a right to flow, by means of a dam, adjoining land which is used for pasturage purposes, is not entitled to remove an ordinary farm fence erected on the servient estate, while he is not exercising his right of flowage.

TORT·for breaking and entering the plaintiff's close in Chicopee, and tearing down a fence thereon. Trial in the Superior Court, without a jury, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The plaintiff's premises consist of a pasture, used by him for pasturage purposes, which was part of a farm to which he obtained his title by inheritance from his father, Luther Smith, and by purchase from the other heirs at law of his father, in 1858. Luther Smith obtained his title to said farm in 1837, by a deed to him from Sylvester Taylor, whose title to the same was obtained in 1836, by a deed from Eleazer Wright.

The defendant obtained his title to land adjacent to the plaintiff's pasture, in 1869, by sundry mesne conveyances from Stephen C. Bemis, who, in 1828, by a deed from said Wright, acquired title to the land now owned by the defendant, and adjoining the plaintiff's pasture. The deed of Wright to Bemis contained the following provision: " Also the right and privilege of flowing any of our lands, which have heretofore at any time been flowed, by reason of a dam having been erected across the above-mentioned brook, the Willimansett, near where there was a sawmill erected, together with the privilege of erecting, or repairing, and keeping up a dam, and of raising and keeping the water to the height aforesaid, and of using said water for the purpose of propelling any kind of machinery which he, the said grantee, may erect, or cause to be erected, on the premises."

The dam above mentioned was. used for the purpose of propelling machinery until 1872, and the flowage caused thereby extended to the distance of sixty rods above the dam, and to

forty rods above the southwesterly boundary of the plaintiff's pasture. In 1872 the dam was carried away, and in 1882 it was partially rebuilt, but not so as to cause flowage of any part of the plaintiff's pasture. The fence, the removal of which is complained of, had been maintained along the southerly and southwesterly boundaries of the plaintiff's pasture, and to Willimansett Brook, since 1872. Said fence consisted in part of a post-and-three-rail fence, and in part of a stake-withe-and-two-rail fence; and of the former, in 1884, the defendant removed about five rods in length, and of the latter about fifteen rods in length. All of the fence thus removed was on land which, prior to 1872, was flowed by means of said dam. In 1848, when the defendant's premises were owned by Willis Phelps, the dam thereon was carried away, but immediately afterwards Phelps rebuilt the dam to a greater height than that of the previous dam; and there was evidence tending to prove that, subsequently to such rebuilding, Phelps paid to the plaintiff's father, on four consecutive years, for flowage of two acres of land now within the plaintiff's pasture, and that, on June 1, 1867, payment was made by one Dimmock, then owning the defendant's premises, to the plaintiff, of the sum of $21.87, for four years' flowage of the plaintiff's pasturage. The land and flowage to which said payments applied were not so definitely and specifically in evidence that the judge could find the location and limits thereof. The judge found that the plaintiff's fence, removed by the defendant, was on land flowed by the dam existing on the defendant's premises in 1828, to which the provisions of the deed of Wright to Bemis applied.

Upon these facts, the judge ruled that the defendant had, at the time of removing the plaintiff's fence, a right of flowage over the land upon which the fence stood, but that, in assertion and furtherance of said right, the defendant could not lawfully remove the fence; found for the plaintiff in the sum of five dollars; and ordered judgment accordingly. The defendant alleged exceptions.

*R. O. Dwight*, for the defendant.

*W. W. McClench*, for the plaintiff.

DEVENS, J. It is the contention of the defendant, that, if he had left the plaintiff's fence undisturbed, its existence would in

time have worked the destruction of the easement of flowage which he had over the plaintiff's land. While a mere non-user of an easement, even for more than twenty years, will not be conclusive evidence of abandonment, such non-user, united with an adverse use of the servient estate inconsistent with the existence of the easement, will extinguish it. *Jennison* v. *Walker*, 11 Gray, 423. *Owen* v. *Field*, 102 Mass. 90. *Barnes* v. *Lloyd*, 112 Mass. 224. *Chandler* v. *Jamaica Pond Aqueduct*, 125 Mass. 544.

The owner of the soil over which the defendant claimed an easement had all the rights and benefits of ownership consistent therewith. He was entitled to the herbage growing thereon, and could use it for raising crops or for pasturing his cattle. *Perley* v. *Chandler*, 6 Mass. 454. *Adams* v. *Emerson*, 6 Pick. 57. *Atkins* v. *Bordman*, 2 Met. 457. To construct such fences as would restrain cattle pastured thereon, or exclude therefrom cattle straying from other fields, if of the character of ordinary farm fences, would not, certainly when the owner of the easement of flowage was making no use thereof, indicate any intention to use the land in any way inconsistent with the easement. Such fences would readily permit the passage of the water, even if they interfered slightly therewith, and would be, in some cases, necessary to the owner's rightful use of his land. They would not be permanent obstructions, as would. be a solid wall prepared so as to exclude water from the owner's premises. This, even if erected while there was no actual user, might furnish just ground of objection, as putting the right to an easement of flowage in danger, in being distinctly adverse to it.

The defendant urges that, if the plaintiff had erected these fences while his mill was in operation, and while he was asserting his right of flowage, there could be no dispute as to his right to remove them. We are not prepared to assent to this. Even if such structures would have some tendency to check the flow of the water, it might well be contended that such slight obstructions, if necessary to the enjoyment by the plaintiff of his lands for agricultural purposes, could not be held an interference with the defendant's easement. It is, however, enough for the case at bar to say, that, while the defendant was not exercising his right of flowage, the plaintiff might properly maintain the

ordinary farm fences required for the protection of his land, and
the defendant would have no right to interfere with them.  In-
deed, the very failure to flow might render such fences necessary
by withdrawing the barrier afforded by the water.

*Exceptions overruled.*