WILLIAM J. FAULKNER *et ux. vs.* EDWARD ROCKET *et al.*

JUNE 27, 1911

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Trespass Quare Clausum. Pleading. Burden of Proof.*

In an action of trespass quare clausum where the declaration alleged seisin in fee simple as well as possession of the *locus,* the plea of (a) liberum tenementum; (b) of a public highway and (c) of a private way, admitted possession of plaintiff and the commission of the acts complained of, and being traversed cast the burden of proof upon defendant.

(2) *Same.*

In an action of trespass quare clausum, replication setting up (a) adverse possession and (b) abandonment, to a plea of a private way, denies the existence of such right of way and casts the burden of proof of such adverse possession and abandonment upon plaintiff.

(3) *Trespass Quare Clausum. Pleading.*

In an action of trespass quare clausum defendant pleaded (a) the general issue; (b) a public highway; (c) a private way and (d) liberum tenementum.

*Held,* following *Lavin* v. *Dodge,* 30 R. I. 8, that the plea of the general issue would be disregarded.

(4) *Deeds. Streets. Title in Streets. Boundaries.*

Where the owner of land platted it and sold lots thereon bounding the same on

a street or way, the adjacent lot owners by such conveyances acquired a right of way over the same, and title in fee not only in the lot described as bounding on the way, but also in one-half of the width of the way in front of and adjacent to his lot.

(5) *Trespass Quare Clausum. Deeds. Occupation Lines.*

In an action of trespass quare clausum, where the later conveyances had been made by occupation lines rather than by metes and bounds, courses and distances, plaintiff could properly show what he and his ancestors in title had actually occupied and enclosed under a claim of right and what the defendant and her ancestors in title had actually occupied.

(6) *Extinguishment of Easement. Evidence.*

In an action of trespass quare clausum where defendant pleaded that the *locus* was a private way; as it appeared that the *locus* had been enclosed for many years, on the east by a stone wall; by a fence on the west and the land so fenced off had been for many years in the use of the plaintiff and defendant for purposes incident to private ownership and inconsistent with its use as a way, and so far as appeared had never been used as a way by anyone, plaintiff could properly show all the facts and circumstances of the original building of the fences and the occupation of the land, so as to show that the original easement imposed on the land had either been extinguished or renounced by the parties entitled to the fee in the land covered by the way, by their use and occupation thereof, and by the maintenance of the fences.

(7) *Estoppel. Deeds. Easements. Extinguishment.*

The fact that deeds to a party and his ancestors in title mentioned a way, lane or street as a boundary of the land does not estop him from showing an extinguishment of the easement either by mutual abandonment or by adverse possession.

(8) *Trespass Quare Clausum. Evidence.*

In an action of trespass quare clausum question asked of plaintiff, "At the time you were purchasing that land did grantor take you over the land?" was admissible, as the land being bounded on one side "by a lane," plaintiff might properly show the location of the "lane," thus defining the extent and limits of the lot claimed by his grantors and of which they put him in possession.

As there were no physical indications of a "lane," plaintiff had the right to establish by parol evidence the actual occupation line of the lot so bounded, and the admissions and declarations of his grantor, who was then deceased, were admissible for that purpose.

(9) *Easements. Extinguishment. Declarations. Evidence.*

The declarations of his grantor were also admissible upon the question of grantors' "adverse possession," as tending to show extinguishment or abandonment of the easement once existing over a portion of the land conveyed by the deed.

(10) *Possession. Evidence. Declarations.*

Declarations by persons in possession of lands as to the character of their

possession, are admissible upon the question whether such possession was adverse.

(11)  *Adverse Possession.   Use and Occupation.*

In an action of trespass quare clausum, plaintiff might properly be inter-
rogated as to his use and occupation of all the land included within the fences
of his lot from the time he received the deed, for the purpose of establishing
a title by "adverse possession" through the plaintiff and his ancestors in
title.   It was also pertinent to the question of the abandonment of an
alleged right of way for the defendant; also in proof of the possession by
plaintiff of said land at the time the first trespass was committed.

(12)  *Trespass Quare Clausum.   Evidence.   Adverse Possession.   Extent of
Premises Conveyed.*

In an action of trespass quare clausum evidence of an ancestor in title of plain-
tiff is admissible to prove that the description in the deed from him to his
grantee included all and was the same as the land described in plaintiff's
declaration; that he held it in full "adverse possession" and the actual
extent and limits of the premises intended to be and actually conveyed by
him and the condition of the land adjoining him on the north during his said
ownership.

(13)  *Trespass Quare Clausum.   Fence as Boundary Line.   Evidence.   Adverse
Possession.*

In an action of trespass quare clausum plaintiff might properly prove that the
division fence between plaintiff and defendant had been recognized and ac-
quiesced in by the parties as a true dividing and boundary line for a length of
time greater than or equal to the period prescribed by the statute of limita-
tions.

(14)  *Trespass Quare Clausum.   Evidence.   Commission of Trespass.*

In an action of trespass quare clausum plaintiff may show by testimony
corroborative of his own, the commission of the trespass alleged.

(15)  *Decision by Justice Sitting Without Jury.   Exceptions.*

Gen. Laws, 1909, cap. 298, sec. 10 provides that "Exceptions to rulings, direc-
tions and decisions made *during a hearing* in a cause heard by the court
without a jury or during a trial by a jury shall be taken immediately;
exceptions to a decision upon a *motion for a new trial* or to the *final decision*
in a cause heard by the court without a jury may be taken by filing the same
in the office of the clerk within seven days after notice of the decision.

In an action tried before a justice sitting without a jury at the conclusion of
plaintiff's testimony and after a long argument upon the evidence, decision
was given and five days thereafter exception was taken to such decision.

*Held*, that, the decision was not made "during a hearing" in the sense of the
statute, and exception was taken in due time.

TRESPASS QUARE CLAUSUM.   Heard on exceptions of
plaintiff and sustained.

PARKHURST, J. This is an action of trespass *quare clausum fregit* brought by the plaintiffs against the defendants; tried before the Presiding Justice of the Superior Court, June 7, 1910, without a jury; and now before this court on the plaintiffs' bill of exceptions to certain rulings of said justice at said trial and to the decision given by him for the defendants at the close of the plaintiffs' testimony in said case.

The state of the pleadings is as follows: The plaintiffs, William J. Faulkner and Hannah M. Faulkner, his wife, in their declaration alleged themselves to be, on March 14th, 1903, seized and possessed in fee simple, as tenants in common, of a certain lot of land in Warren, in this State, describing the same by metes and bounds, and that the defendants, Edward Rocket and Bridget Rocket, on said date and at other times between said date and the date of the plaintiffs' writ (October 8, 1903), with force and arms broke and entered the plaintiffs' said close and committed sundry trespasses thereon.

The defendants pleaded:

*First.* The general issue.

*Second.* That a public highway existed along the northerly part of said close and that the alleged trespasses were acts lawfully committed by the defendants upon that part of said close over which said highway existed in the proper use by them thereof.

*Third.* That a private way, fifty feet in width, existed along the northerly part of said close (called Taylor street), the southerly line thereof being two hundred feet north from the northerly line of Vernon Street (named in said declaration), which by grant said defendant Bridget Rocket, as owner in fee simple of land bounding southerly on said way, and her husband, said Edward Rocket, had right to use, stating particularly from and through whom they claimed this right, and that the alleged trespasses were acts lawfully committed by the defendants upon that part of

said close over which said private way existed in the proper use by them thereof.

*Fourth. Liberum tenementum* of the defendant Bridget Rocket in said close, defendant Edward Rocket justifying as her servant thereon.

The plaintiffs joined issue on the first plea; traversed the second and fourth pleas; and to the third plea replied:

*First.* Traversing it.

*Second.* That the plaintiffs and all others from whom they derive title, had been for more than twenty years before said March 14, A. D. 1903 (the date of the first trespass by the defendants), in the uninterrupted, quiet, peaceable and actual seisin and possession of the entire close, as specifically set forth, bounded and described in said declaration, claiming the same as their proper, sole and rightful estate in fee simple.

*Third.* That said defendant, Bridget Rocket, and her predecessors in title to her said land, for more than twenty years before said March 14, A. D. 1903, had renounced and abandoned her and their easement in said private way, and her and their right to use the same in manner and for the purposes alleged in defendants' said third plea.

The defendants made rejoinder to the second and third replications to the third plea by traversing the same.

By agreement of counsel, matters alleged in the declaration and not specially answered by the special pleas were permitted to be shown under the general issue with the same effect as if pleaded.

The effect of the pleadings as above set forth, was as follows: The declaration alleges seisin in fee simple, as well as possession, by the plaintiffs of the land described by metes and bounds therein.

(1)     Trespass *quare clausum fregit* does not try the title of the plaintiffs in the land; the gist of the action is the injury done to their possession; as was said in *Lavin* v. *Dodge*, 30 R. I. 8, at p. 11: "The gist of this action is the injury to the possession. 'In trespass and ejectment, which is an

action distinctively to try title, upon a plea of the general issue the plaintiff must prove title as a *sine qua non* of maintaining an action. In trespass *quare clausum,* possession alone is sufficient to maintain the action unless the defendant defends upon the ground that the title was in him and hence that there was no trespass, in which case the defendant must specially plead title in himself, or *liberum tenementum,* as it is called.' *Schœffer* v. *Brown,* 23 R. I. 364.

" 'The action being trespass *quare clausum,* the only issues were the possession of the plaintiff and the acts of trespass by the defendant. . . . The question of title in such an action is only put in issue upon the setting up of title in the defendant.' *Sayles* v. *Mitchell,* 22 R. I. 238.

"When the defendant pleaded *liberum tenementum* there can be no question, under the authorities, but that he admitted the possession of the plaintiff and the committing of the acts complained of, and assumed the burden of establishing his title by a preponderance of the testimony. *Carpenter* v. *Logee,* 24 R. I. 383. See also *Wilbur* v. *Peckham,* 22 R. I. 284; *City of Providence* v. *Adams,* 10 R. I. 184." See also 2 Greenleaf on Ev. §§ 613, 626; I Chitty Pl. pp. 195 *et seq.*

The plea of *liberum tenementum,* which was traversed, admitted the plaintiffs' possession and the commission of the acts complained of, but claimed the land to belong to the defendant, Bridget Rocket. Greenleaf's Evidence, V. 2, sec. 626; *Lavin* v. *Dodge, supra,* and cases cited.

The plea of a public highway, which was traversed, also admitted the plaintiffs' possession and the commission of said acts, but justified the same as acts necessary for the proper use of said highway.

In both the last named pleas the burden of proof was upon the defendants.

The plea of a private way for the defendant Bridget Rocket also admitted the plaintiffs' possession and the com-

mission of the said acts, but justified the same as acts necessary for the proper use of said private way.

The plaintiffs' traverse of the same put the burden of proof upon the defendants.

(2)    The plaintiffs' replications setting up "adverse possession" and "abandonment" denied the existence of such right of way for the defendants, but put the burden of proof of such "adverse possession" and "abandonment" upon the plaintiffs.

(3)    As was held in the case of *Lavin* v. *Dodge, supra,* the plea of general issue in this case is to be disregarded.

Upon the issues as thus determined by the pleadings the parties proceeded to trial before a judge without a jury.

The plaintiffs produced in evidence numerous exhibits:

1.    Three plats, marked Exhibits A., B. and C. made by Charles Estes, Surveyor, and hereinafter referred to as Plats I, II, and III.   Plat I is the close described in the declaration as it appeared September 3, 1903, a month prior to the date of the writ.   Plat II was made June, 1904, and includes the plaintiffs' said close, land of the Rockets and the Arnold lot lying west of plaintiffs' said close as it then appeared.   Plat III is a representation, so far as can be ascertained from recorded deeds, of certain parts of a plat of land referred to in said deeds as belonging to and made by Burr & Smith in 1847, with the superimposition upon the same of the plaintiffs', defendants' and other persons' present land that was originally comprehended within said Burr & Smith Plat.

The several plats are here reproduced for convenience of reference, so that this opinion may be more easily understood.

2.    By agreement of counsel, a certificate, marked Exhibit D, from the Town Clerk of Bristol, where the land was originally situated, that neither the said Burr & Smith Plat, nor any copy or record thereof could be found in his office.

3.    By agreement of counsel, three abstracts of title from the Bristol and Warren Records, marked Exhibits E, F, and

# PLAT I.

PLAT OF LAND situated on Vernon street, Warren, R. I.,
belonging to WILLIAM J. FAULKNER.

Surveyed September 3, 1903.    Containing 39,131 square feet.    Scale, 30 feet per inch.

CHARLES ESTES, Surveyor.

## PLAT II.

PLAT OF LAND situated on Vernon street (Cranes lane), Warren, R. I.,
belonging to WILLIAM J. FAULKNER AND
EDWARD ROCKET.

Scale, 40 feet per inch.    June, 1904.    C. ESTES, Surveyor.

# PLAT III.

PLAT OF LAND situated on Vernon street (Cranes lane), in
Warren, (formerly Bristol, R. I.) formerly owned
by BURR & SMITH.

Platted May, 1904.   Scale, 80 feet per inch.

C. ESTES, Surveyor.

517' 10"

491' 9"

S. 8¼° W. 136' 7"

S. 76¾° E 214'

N. 15½° E. 134' 9"

617½'

34

39    80' NE

33    50

15    9

WARREN SOUTH BURYING GROUND

108.5'    100'    80'    100'    80'

40    32    36½    16    8    22¾'

Wall    222.30'    136.27'

1262⁄2    80'    80'    80'

41    31    17    7    80'

S. C. BROWN.    F. ROCKET    W. J. FOULKNER

Fence 4. 222' W. 4' N    119.23'    fence 226.30

80'    80'    80'

30    18    6

Fence    ARNOLD    100'    100'

108.5'    ←50→    45.5    51.3

FIRST AVE    (CRANES LANE)

S. WHEATON    457'    VERNON ST.

40'    100'    100'

80'    19    5    80'

TAYLOR ST

80'    20    4    80'

40'    100'    100'

424.65'

F. WILMARTH

240

SOUTH MAIN ST

G, all setting forth conveyances of land formerly belonging to Burr & Smith as aforesaid from the date of their ownership through successive owners down to the ownership of: *a*. the plaintiffs; *b*. the defendant Bridget Rockett; *c*. certain other parties, including the said Arnold lot and the Warren South Burial Ground land.

4.   Deeds of the plaintiff's lot to them and their predecessors in title back to Charles S. Maxfield, marked Exhibits H to O, inclusive.

The plaintiffs also produced an agreement of counsel as to certain facts, to this effect:   That Crane's Lane (named in the abstracts) is now called Vernon Street; that the land adjoining and adjacent to the same was annexed to Warren, May 30, 1873; that Joseph Smith, grantee in sheriff's deed of March 19, 1853, died about September 23, 1854; that Temperance Carr and others, Joseph Smith and others, and Charles Smith, grantors named in certain deeds, were the heirs-at-law or devisees of said Joseph Smith; and that James Sharkey, named in certain deeds, died about November 9, 1872, leaving a widow, Susan, and two heirs-at-law, John, his brother, and Mary, his sister, wife of Neil Hughes.

These facts were stipulated in order to explain the plats and abstracts and to show complete chains of title to the land therein described.

The plaintiffs' first witness was said Charles Estes, surveyor, who testified as to said plats made by him, explaining the circumstances and manner of making them, the situation and condition of fences and other certain objects upon the lots of land embraced within Plats I and II at the time he made them, the character and nature of certain objects delineated upon these plats, and his mode, and the reasons therefor, of ascertaining the measurements thereon.

The plaintiff, William J. Faulkner, was the next witness, and his testimony was confined by the court, upon the objection of the defendants' counsel, to a very few points, viz.: the identity of himself and wife Hannah as the grantees named in the deed of Lawrence Smith and wife; the nature

of the boundaries of his said land when he took possession of it April 29, 1899; certain trespasses committed thereon by the defendant Bridget Rocket, March 21, 1903, and subsequently, and the nature and extent of the damage done by her, and the trespassing by both defendants jointly several times thereon. A certain question was put by the plaintiffs' counsel to said Faulkner and answered affirmatively by him as to one of the plaintiffs' grantors taking him over the land deeded to them at the time of his purchase thereof, and both question and answer were ruled out by the court. Two questions put to him by his counsel as to the use, occupation and possession by him of said land, from the commencement of his ownership to the date of the first trespass committed by the defendants, were ruled out by the court.

The proffered testimony of three other witnesses as to the commission of the trespasses on said land by said defendant Bridget Rocket was excluded by the court.

The court rigorously excluded all other testimony offered, either as tending to prove the plaintiffs' title to the said land within the limits of the way or lane, as being free and relieved of the easement of way, by "adverse possession," so-called, under the provisions of the Rhode Island Statute of Possessions; or as tending to prove that the defendant Bridget Rocket and her predecessors in title, had abandoned the easement in whatever right of way once existed over said land; or as tending to prove mutual abandonment of the right of way as between the parties.

Later the court informed the counsel for the plaintiffs that it was unnecessary for them to prove the trespasses or possession as these were admitted by the state of the pleadings (citing *Lavin* v. *Dodge, supra);* and relying upon this statement by the court, the plaintiffs then rested their case. Thereupon after considerable argument between court and counsel, the court decided as follows: "Well, on the evidence as I hold, I think this case will doubtless have to go to the Supreme Court, and the most reasonable view I can

take of it is to give decision for the defendant, and let the
plaintiff have his case reviewed by the Supreme Court."

It is very difficult, from a reading of the transcript, to dis-
cover, upon just what grounds the court ruled as it did upon
the exclusions of the testimony offered, and finally arrived at
the conclusion above set forth.   It would seem that, after a
long discussion of the evidence in the case, the court was of
the opinion that the plea of *liberum tenementum* filed by the
defendant was an admission by the defendant of the posses-
sion of the close by the plaintiffs and of the commission of
the trespasses, and that the plaintiffs having given evidence of
the damage done to their possession had made out a *prima
facie* case; and that the burden was then upon the defendants
to prove their title to the land, if they had any, so as to excuse
the trespasses, under the law as laid down in *Lavin* v. *Dodge,
supra;* and that upon the strength of this ruling, the plain-
tiffs rested their case.   Upon further discussion of the evi-
dence, however, as it appeared that the deeds under which
the plaintiffs and their ancestors in title acquired their
title expressly mentioned a lane or a street fifty feet in width,
sometimes called Taylor St. in the deeds, and shown on
Plat III, above referred to, as the northerly boundary of the
plaintiffs' land, the court was of the opinion that the plain-
tiffs had not acquired any title in fee to one-half of the land
subject to the right of way, but that their fee was limited
to the southerly line of the way; and that by accepting their
deed from their ancestors in title, they were estopped to
deny the existence of the way, or to show that they had
acquired title thereto either by adverse possession, or by
mutual abandonment of the way by the plaintiffs and de-
fendants and by their ancestors in title; and that conse-
quently the plaintiffs, although they had shown their pos-
session at the time of the trespasses and although the same
was admitted by the defendants' plea of *liberum tenementum,*
had not made out a title in fee to the portion of the lane
enclosed, and therefore were not entitled to recover.

The substance of the evidence introduced by plaintiffs

is as follows: The land in question, as shown by the abstracts and deeds on file, once formed part of a large tract conveyed to Burr & Smith, March 23, 1846. Burr & Smith platted the said tract and conveyed five lots thereon as platted, viz.: 6, 8, 17, 30 and 32, No. 17 being bounded northerly, and No. 30 and No. 32 southerly, by a "right of way" fifty (50) feet wide, stated as "described on said plat as Taylor Street." This plat was never recorded. Afterwards the whole of said tract, except the five lots so sold, was levied upon and sold by the sheriff to Joseph Smith, who thereafter sold seven other lots as platted thereon, among them No. 7 and No. 16, No. 16 being bounded northerly by a street. After the death of said Joseph Smith, his heirs or devisees sold the rest of said tract, some portions as numbered lots, some portions as parcels of land, described by metes and bounds, No. 18 and No. 31 being among the numbered lots, and being bounded No. 18 northerly, and No. 31 southerly, by a street. (The conveyance of parts of said tract in parcels has rendered it impossible to reproduce said plat in its entirety. Plat III, above shown, is an attempt to reproduce it so far as possible.)

Lots No. 7, and No. 17, in their entirety, and the westerly parts of lots No. 8 and No. 16, came finally through successive transfers into the one ownership of David M. Hatch, lost their identity as separate lots, and on February 2, 1874, were conveyed as one lot or parcel to Henry F. Church and described as bounded northerly "by a street or lane." Subsequent transfers of this parcel were made to various parties, the last being from Lawrence Smith and wife to the plaintiffs, April 29, 1899. In each deed subsequent to that of Henry F. Church, beginning August 2, 1876, the parcel was bounded northerly by a "lane."

Lots No. 30 and No. 31 in their entirety, and the westerly part of lot No. 32 came finally into the one ownership of James Sharkey, No. 30, January 21, 1863, as bounded southerly on a street, No. 31, April 10, 1869, as bounded southerly on a street, and the westerly part of No. 32, November 18,

1871, as a parcel by itself and as bounded southerly on a street. Said lots thus lost their identity as separate lots. Said Sharkey died in November, 1872, leaving a widow, Susan, and two heirs-at-law, John Sharkey and Mary Hughes. Said Susan, March 26, 1891, conveyed by quitclaim deed to said John Sharkey her interest in said entire parcel, describing the same as follows: northerly by land of Maria R. Brown, widow of Samuel C., easterly by land of Warren South Burial Ground, southerly by land of *Lawrence W. Smith and wife,* and land of wife of George Arnold, westerly by land of William B. Nichols.

Said Mary Hughes and her husband, December 15, 1892, conveyed by quitclaim deed to said John Sharkey their interest in the same land with the description thereof identical with that in said Susan's deed. Said John Sharkey, November 2, 1896, conveyed by warranty deed to the defendant Bridget Rocket the lot which she now owns, describing the same as follows: northerly by land of Maria R. Brown, widow of Samuel C., easterly by Warren South Burial Ground, southerly by land of *Lawrence W. Smith and wife,* and land of wife of George Arnold, westerly by a so-called street; also all his interest in and to "said so-called street adjoining said lot on the *westerly* side." (Shown on Plats II and III, as "First Ave.")

Lots No. 6 and No. 18 came finally into the one ownership of Rufus D. Arnold, No. 6, December 15, 1865, No. 18, April 17, 1866, and so lost their identity as separate lots. This land adjoins the plaintiffs' land on the west; and lot No. 18 bounds northerly on a street.

The three plats above shown, and the testimony of Charles Estes, who made them, together showed the measurements and boundaries, (Plat I) of the plaintiffs' close as laid in their declaration, that a row of post holes existed at the back of said lot running in a line practically parallel with the front line thereof on Vernon Street and a post west of the westernmost post hole and in the same line; also two posts between this post and the north end of plaintiffs' west

boundary fence and in the line thereof; (Plats I and II); also the existence and situation of a row of apple trees in the back part of said lot (Plats I and II); also the existence and situation of several peach trees on the land west of the back part of the plaintiffs' land and north of the rear fence shown on the Arnold land (Plat II); the existence of a board fence to the west of said west post and running from a point a little south of the same northerly twenty-four (24) feet to the Rocket land (Plat II), with a grapevine perhaps twenty years old growing thereon; also the existence and line of the stone wall along the westerly boundary of the Warren South Burial Ground from Vernon Street by the land of the plaintiffs and the defendant Bridget Rocket and beyond. Estes also showed the existence at the times he went to the place of hen yards and wood yards on the land north of Arnold's place and west of the said board fence, and that there was no indication of a street or travelled way on either side of said post holes, and that there was only grass on each side of them. Plat III showed the location of the Faulkner, Rocket, Arnold, Collins, Wilmarth, Brown, and Warren South Burial Ground lots upon the tract originally owned by Burr & Smith, and the location of the lots and streets originally platted thereon, so far as could be ascertained or indicated from the transfers thereof contained in the said abstracts.

The plaintiff Faulkner testified that when he took possession of the land which he used and occupied since April 28, 1899 (shown on Plat I), the boundaries were, on the east a stone wall, on the north a fence "slat and lath or rail," on the west partly a close board fence, partly a rail or picket fence, and that the land fronted on Vernon Street; that on March 21, 1903, the defendant Bridget Rocket came and pulled down and smashed said north fence and twenty-five (25) feet of the north part of the west fence as well, claiming the land to be hers; that afterwards she raked manure off of the northerly twenty-five (25) feet of his said land when he put it on and destroyed it and abused him with bad language;

and that both defendants came upon his said land together several times afterwards, walking over the lot and abusing him with dirty language and threatening him.

There is no evidence to sustain the defendants' plea of a public highway; nor is there anything to show that the way in question ever existed as an open travelled way, as to that portion of it which lies between plaintiffs' and defendants' land.

(4)   It is evident from an examination of these deeds and plats that when in 1846–1847 Burr & Smith platted these lands and sold lots thereon bounding the same on a street or way, called Taylor St., they thereby intended to lay out a way fifty feet wide for the benefit of the lot owners adjacent thereto; and that said adjacent lot owners by such conveyances acquired a right of way over the same. It is equally evident that, under numerous decisions of this court, each lot owner adjacent to the way acquired a title in fee not only in the lot described by number and also described as bounded northerly or southerly on said way or street or lane, but also in one-half of the width of the way in front of and adjacent to his lot. *Hughes* v. *Prov. & Wor. R. R. Co.*, 2 R. I. 493, 512; *Healey* v. *Babbitt*, 14 R. I. 533; *Anthony* v. *City of Providence*, 18 R. I. 699; *Bentley* v. *Root*, 19 R. I. 205 and cases cited; *Baker* v. *Barry*, 22 R. I. 471, 473. It is also quite evident that it is difficult (perhaps impossible) to ascertain exactly what were the true lines of said way called Taylor St., because the plat of Burr & Smith was never recorded and is not produced, perhaps is not to be found. The lots sold on the Burr & Smith Plat and bounded southerly on Crane's Lane (now Vernon St.) by the earlier deeds, from 1847 to 1864, call for a depth of 100 feet, and those bounded northerly on the way called Taylor St. call for a depth of 100 feet, making a distance of two hundred feet (as of the year 1847) between the north line of Crane's Lane and the south line of Taylor St. Crane's Lane at that time was described as 40 feet in width, *e. g.*, in deed of lot No. 8, which is bounded "south by a right of way granted

by grantors'' (Burr & Smith) "which runs parallel with Crane's Lane, making Crane's Lane 40 feet in width" &c. (See Plat III.)    It appears from Plat II that the actual occupation of the Arnold lot (formerly lots No. 6 and No. 18,—see Plat III) is 201 feet in depth; and the actual occupation of the plaintiffs, including the portion of Taylor St., enclosed, is 226.30 in depth, or 1.30 feet more than the calls in the original deeds plus 25 feet or one-half of the width of Taylor St.   Looking at the defendants' lot as actually occupied, shown on Plat II, and comparing it with the calls in the deeds and with Plat III, it appears that the original depth of the lots called for by the earlier deeds, from 1847 to 1871, was 108.5 feet, which added to the 25 feet, being one-half the width of Taylor St., makes 133.5 feet; while the actual occupation by the defendants shows a depth from the land occupied by the plaintiffs and including the portion of Taylor St. actually occupied by the defendants of 135.29 feet, or 1.79 feet in depth more than the calls from the original deeds.   In short, the parties to this suit are in the actual occupation of more land running northerly and southerly than the earlier deeds call for; and it is not possible from the testimony as it now stands to tell just where the lines of Taylor St. were originally laid out.    It also appears from the later deeds from 1870–1 to the ancestors in title of the plaintiffs that the north and south distances called for in the earlier deeds are no longer mentioned; and that the parcels sold and conveyed are bounded only by the lands of adjacent proprietors; and that the parcels sold and conveyed between the Sharkeys, the immediate ancestors in title of the defendant Bridget Rocket, and sold and conveyed to Bridget Rocket by John Sharkey (deeds from 1891 to Nov. 21, 1896) are bounded only by adjacent proprietors without giving distances, and without mentioning Taylor St. or any lane or way as the southern boundary, which is described in these later deeds as "southerly by land of Lawrence W. Smith and wife, and land of wife of George Arnold."    It would seem then that the

ancestors in title of both plaintiffs and defendants, finding themselves in the actual occupation of more land than the earlier deeds called for, chose to sell and purchase by their lines of occupation rather than by reference to the old descriptions contained in the Burr & Smith deeds by reference to the old plat.

It is to be remembered that not only had evidence of the plaintiffs' title and occupation of the close described in the declaration been put in by the deeds, abstracts and plats above referred to, but also that the evidence of defendants' title had been put in under the stipulation allowing the use of such abstracts. The defendants claimed that, inasmuch as the abstract of the title of Bridget Rocket showed that she had title in fee to one-half of the width of Taylor St., and the evidence showed that the fence did not appear to be on the middle line of the way (Taylor St.), but to be on a line 25.85 feet northerly from the assumed southerly line of Taylor St., (see Plat I), the fence was therefore on Bridget Rocket's land and she had a right to remove it. But as we have above shown, the lines of Taylor St. and its exact middle line cannot be ascertained definitely, under the evidence; and it does not follow that the line of the fence as built was not exactly on the middle line of Taylor St. as it was originally laid out. It is as fair to assume that the original plat of Burr & Smith, which apparently cannot now be produced, was inaccurate, as it is now to assume that the occupation lines of the adjacent owners are incorrect; and it is equally as fair to assume that the surplus of land (1.30 feet in depth) in plaintiffs' occupation over and above the depth called for in the older deeds, has been acquired by the plaintiffs and their ancestors in title from the relocation of Crane's Lane as Vernon St., whereby that amount of land may have been added to the southerly front of the lots bounding thereon, as it is to assume that the plaintiffs and their ancestors in title have encroached northerly upon land rightfully belonging to the defendant Bridget Rocket. Inasmuch, therefore, as the later conveyances have been

(5) made by occupation lines rather than by metes and bounds, courses and distances, it was perfectly proper for the plaintiffs to endeavor to show what they and their ancestors in title had actually occupied and enclosed under a claim of right, and what the defendant and her ancestors in title had actually occupied; and inasmuch as it was proved that the entire portion of Taylor St. lying between lands of the plaintiffs and defendants had for many years been enclosed by the stone wall of the Warren South Burying Ground on the east, by a tight board fence on the west and divided by a fence approximately in the middle of the way; and that the

(6) land so fenced off had been for many years in the use and occupation of the plaintiffs and defendants, respectively, for raising grass or use as a garden or other uses incident to private ownership, and entirely inconsistent with the use thereof as a way, it not appearing that the land in question had ever been used as a way by anyone, it was proper for the plaintiffs to show, if possible, all the facts and circumstances of the original building of the fences and the occupation and use of the lands, so as to show that the original easement of a way imposed upon the land by Burr & Smith had either been extinguished or renounced by the parties entitled to the fee in the land covered by the way, by their use and occupation thereof and by the maintenance of the fences.

(7)     The defendants also claimed, and the court below seemed to be of the opinion, that, inasmuch as the deeds to the plaintiffs and their ancestors in title mentioned the way, lane or street (Taylor St.) as the northerly boundary of the lands conveyed, the plaintiffs were estopped, as against the defendants, by the acceptance of such deeds from offering any proof of the extinguishment of the easement either by mutual abandonment or by adverse possession. We do not find any warrant for any such position, under the circumstances of this case, nor has any case been cited to us which goes to the extent claimed herein or in any way applies to this case. The proof actually made by the plaintiffs in

this case, supplemented by the further proof offered and excluded, if the same had shown the facts as claimed, would in our opinion have brought this case within the principle of the case of *Baker* v. *Barry*, 22 R. I. 471, where it appeared, as in this case, that the original proprietors of a parcel of land had platted it into lots with a gangway 10 feet wide between the lots; and that the lot owned by the defendant was originally sold bounding it "northerly by a gangway." The court having decided that there had been a gangway in which the plaintiff's ancestors in title had rights, then proceeds as follows (p. 473): "But the evidence showed that this gangway had been fenced in and appropriated along the center line by the adjoining owners prior to 1854, and that it has since remained so. What the plaintiff in this case claims is not the gangway as a whole, but only the five feet across the defendant's lot to Lemon street as a footway.

"This brings the case within the decision in *Steere* v. *Tiffany*, 13 R. I. 568, where it was held that, when it was clear that a way was to be used in common as a whole, and a part of it was appropriated by an owner of one of the dominant tenements, the act of appropriation was an abandonment by such owner of his easement in the whole way. See, also, *Aldrich* v. *Billings*, 14 R. I. 233.

"The only difference between *Steere* v. *Tiffany* and this case is that in the former case the appropriation of a part of the gangway was the plaintiff's own act, while in this case it appears that the gangway had been appropriated by the several adjoining owners, including the plaintiff's ancestors in title.

"But the half of the gangway at the rear was inclosed with the rest of the plaintiff's lot, and there is no difference in principle between an original appropriation by an owner and the acceptance and continuance of such appropriation after one becomes an owner. In both cases the private occupation is inconsistent with a common use, and, where this has taken place all along the line, it amounts to a mutual agreement to abandon the way.

"In this case the private occupation has ripened into a. title by an exclusive possession of more than twenty years. The strip is no longer a gangway, but is held in separate ownership."

There is no suggestion in the above quoted case that any estoppel arose as between the parties, by reason of the original layout of the way by the proprietor, and by reason of its subsequent mention in the deeds of conveyance to their ancestors in title, so as to prevent the parties from showing all the facts as to the closing up of the way and the occupation of the land by the parties. And see *Steere* v. *Tiffany*, 13 R. I. 568.

The plaintiffs have stated in their bill of exceptions eight exceptions to rulings of the justice trying said cause in the course of the trial, and three exceptions to his decision for the defendants at the close of the plaintiffs' testimony therein.

(8)     The first exception is to his ruling declaring a certain question put to the plaintiff, William J. Faulkner, and his answer to be inadmissible. The question was: "At the time you were purchasing that land did Mr. Smith take you over the land?" The answer was "Yes." The question and answer were objected to by defendants' counsel on the ground that it was an attempt to explain and qualify the effect of the deed; and the court ruled the same to be inadmissible. The land referred to was that conveyed by Mr. Smith and wife to the plaintiffs by their deed. The boundaries described in said deed in substance were: southerly by Vernon street, 136 feet, more or less, easterly by Warren South Burial Ground, northerly by a lane, westerly by land formerly of Rufus Arnold. The object of the question was to show the location of the "lane" on the north side of the lot named in said deed, as the plaintiffs' grantors claimed it to be, and the extent and limits of the lot intended or claimed by them to be conveyed by said deed and which they warranted to the plaintiffs, and of which they put the plaintiffs in possession at the time of the conveyance.

As the gist of the action, as above shown, is injury to the plaintiffs' possession, it was perfectly proper for the plaintiffs to show what land their ancestor was in fact possessed of at the time of his deed, and of which the plaintiffs were in fact placed in possession. The plaintiffs, on account of the indefiniteness of the said northerly boundary as expressed in said deed, and there being no physical marks or indications of a "lane" or any travelled way there, as Estes and Faulkner testified, had the right to establish by parol evidence in this instance the actual northerly occupation line of said lot, and the extent and limits of said lot, as contemplated by the parties to said deed; and the admissions and declarations of Mr. Smith, who was deceased, at the time of trial, one of the then owners of said lot, were admissible for this purpose. 3 Washburn on Real Property, 6th Ed. secs. 2320, 2346, 2347 and cases therein cited.

(9) The declarations of Mr. Smith made at that time were also admissible upon the question of the grantors' "adverse possession," as tending to show extinguishment or abandonment, of the easement of way once existing over a portion (10) of the land conveyed by said deed. Declarations made by persons in possession of lands, as to the character of their possession, are admissible upon the question whether such possession was adverse. *Ward* v. *Cochran,* 71 Fed. Rep. 127; *Casey* v. *Casey,* 107 Iowa, 192; *High* v. *Pancake,* 42 W. Va. 602; *Burr* v. *Smith,* 152 Ind. 469, 53 N. E. 469. Plaintiffs' first exception is therefore sustained.

(11) The second exception is to said justice's ruling refusing to permit the plaintiff, William J. Faulkner, to be asked whether or not he used and occupied all the land included within the fences of his said lot from the time when he got the deed thereof, April 29, 1899, until March 21, 1905. The question was asked, as one of a series of questions to be put for the purpose of establishing a title in the plaintiffs to the land as described in the declaration, free of any easement of way, by "adverse possession" through the plaintiffs and their predecessors in title for the required statutory

period therefore (20 years) prior to the commission of the first trespass thereon by the defendants. It was also pertinent to the question of the abandonment of an alleged right of way for the defendants over the northerly part of said land raised by the pleadings. It was also pertinent in proof of the possession by the plaintiffs of said land at the time the first trespass was committed thereon by the defendants. Although the question asked and excluded was a proper question for the purposes above set forth, yet the plaintiff was allowed subsequently without objection to cover substantially the same ground as to his use and occupation of his land, for the period mentioned; therefore this exception need not be further considered.

(12)     The third, fourth and fifth exceptions are to said justice's rulings, respectively, refusing to permit the plaintiff, William J. Faulkner, to be asked certain questions; and the eighth exception is to a ruling disallowing and excluding the proffered testimony of Charles S. Maxfield. These questions were asked and the testimony proffered for the purpose of showing the nature and extent of the plaintiffs' use and occupation, with a view to establish a title in the plaintiffs to the rear portion of the land as described in the declaration, free of any easement of way thereover, by showing such easement to have been extinguished by "adverse possession" through the plaintiffs and their predecessors in title for twenty years or more prior to the commission of the first trespass thereon by the defendants, and to prove such abandonment of any former right of way over said land as would preclude the defendants from using or claiming the right to use the same.

The questions put to Faulkner were as to facts within his knowledge and were material for the purposes aforesaid. They touched upon his use and occupation of the premises and the status and condition of the land adjoining him on the north. Maxfield was an ancestor in title of Faulkner and his testimony was offered to prove the beginning of the said "adverse possession" in him; that the description in

the warranty deed from him to his grantee included all, and was the same as, the land described in plaintiffs' declaration; that he held it in full "adverse possession;" the actual extent and limits of the premises intended to be, and actually conveyed and warranted by him in said deed; and the status and condition of the land adjoining him on the north during his said ownership.

The above proffered testimony was apparently excluded upon the ground that the plaintiffs had shown no title whatever to any portion of the land included within the limits of Taylor St., but were restricted by their deed to the southerly line thereof; which, as we have shown above, is not the law of this state. See cases cited *supra*, beginning with *Hughes* v. *Providence & Worcester R. R. Co.*, 2 R. I. 493, 512. A further ground of exclusion also appears to have been that the plaintiffs were estopped by their deeds from claiming any such title free of the easement. We have already given our opinion that there was no such estoppel. In our opinion under the facts of this case the defendants had no right to set up by way of estoppel the recitals in the deed to the plaintiffs or in the deeds from and to the successive predecessors in title of the plaintiffs, because the defendants are strangers to all said deeds and are not privies to any of the parties thereto. The defendants' deed conveys no right of way over the land of the plaintiffs, nor in any street whatsoever on the southerly side of the defendants' land. *Allen* v. *Allen*, 45 Penn. St. 468; 3 Washburn on Real Property, 6th Ed. sec. 1937 and cases therein cited.

Furthermore, the plaintiffs had the right to prove such abandonment or renunciation of any former right of way over said land as would preclude the defendants from using, or claiming the right to use, the same. The general right to prove such an abandonment cannot be disputed. It may be shown in various ways, by different acts. *Steere* v. *Tiffany*, 13 R. I. 568; *Aldrich* v. *Billings*, 14 R. I. 233; *Bentley* v. *Root*, 19 R. I. 205; *Baker* v. *Barry*, 22 R. I. 471; *Smith* v. *Langewald*, 140 Mass. 205.

(13)   And it was also proper for the plaintiffs to show by these witnesses, as it was offered to show, that the division fence between the plaintiffs and defendants in or near the centre line of Taylor St., had been recognized and acquiesced in by the parties as a true dividing and boundary line for a length of time greater than or equal to the period prescribed by the statute of limitations, under the decision in *O'Donnell* v. *Penney*, 17 R. I. 164, where it is said (p. 166): "There are numerous decisions to the effect that, when the boundary line between adjacent lands is in dispute or uncertain, the owners may establish a division line between them by express parol agreement, and that, if such agreement is immediately executed and followed by actual possession according to such line, the agreement is binding and conclusive, and such division line shall not be disturbed, though it may afterwards appear that it was not the true line according to the paper title." (citing cases.) "Such agreement is not regarded as passing any real estate, but merely as defining the line between their respective grants, and hence is not within the statute of frauds." (citing cases.) "And even when no express agreement is shown, the authorities are numerous that acquiescence in a boundary line, assumed or established for a period equal to that prescribed in the statute of limitations to bar an entry, is conclusive evidence of such an agreement, and will preclude the parties from setting up the claim that the line so acquiesced in is not the true boundary."

It may be that proof of the facts offered to be proved by these witnesses would be conclusive and would "preclude the parties from setting up the claim that the line so acquiesced in is not the true boundary," in view of the uncertainty, as above shown, as to just where the lines of Taylor St. were originally laid out. We think the evidence offered should have been allowed, and that the exclusion thereof was error. The plaintiffs' third, fourth, fifth and eighth exceptions are therefore sustained.

(14)   The sixth and seventh exceptions are to said justice's ruling disallowing and excluding the proffered testimony, respectively, of Clarence W. Faulkner and of Charles T. Warner and Lucius Warner.   The testimony proffered was that of eye-witnesses in proof of the commission of said trespasses on the plaintiffs' said land by said defendant Bridget Rocket, as the transcript shows.   The court erred in disallowing and excluding said proffered testimony. The plaintiff had the right to prove the commission of said trespasses by said defendant by the testimony of any witnesses thereto.   Their testimony was important to the plaintiffs as corroborating and thereby adding to the weight of Faulkner's testimony as against any testimony that might later be offered by the defendants; both as to the extent and nature of the trespasses and as to the amount of the damages sustained.   The sixth and seventh exceptions are therefore sustained.

(15)   The ninth, tenth and eleventh exceptions are to the decision of said justice for the defendants at the close of the plaintiffs' testimony in said trial.   The grounds of these exceptions are that said decision was contrary to law and against the evidence and the weight thereof.   The defendants claim that these exceptions were not taken at the proper time; that they should have been taken in open court, immediately after the court had rendered its decision; and that, as exception to the decision was in fact taken only upon the notice of intention to prosecute exceptions, filed June 12, 1910, within seven days after the decision, they are not properly before the court, because they are not taken as provided in Gen. Laws, R. I. cap. 298, § 10, which reads as follows:   "Exceptions to rulings, directions and decisions made during a hearing in a cause heard by the court without a jury or during a trial by a jury shall be taken immediately.   Exceptions to a decision upon a motion for a new trial or to the final decision in a cause heard by the court without a jury may be taken by filing the same in the office of the clerk within seven days after notice of the deci-

sion." The decision in this case was not made "during a hearing," in the sense intended by the above statute. It was made after the hearing was completed, and after a long argument upon the testimony; and was clearly within the meaning of the last clause of the above quoted section. We think that exception to said decision was taken in due time,. and is properly before this court.

We think the court below was clearly in error in giving decision for the defendants, under the circumstances of this case. As we have shown, the plaintiffs offered a great deal of testimony material to the adequate determination of the rights of the parties, which was erroneously excluded. The rulings of the court with regard to the effect of the deeds and other evidence offered were confusing, uncertain, and in many respects erroneous, and were certainly misleading to plaintiffs' counsel, and seem, at times, to have led the plaintiffs' counsel to believe that, in the opinion of the court, he had made out a *prima facie* case, and did not need to offer further testimony. It is sufficient to say here that, inasmuch as the case had not been fully tried, owing to misrulings and improper exclusion of testimony, the giving of a decision for the defendants was premature, and unwarranted by the state of the evidence. The exceptions to the decision are therefore sustained.

All of the plaintiffs' exceptions are sustained and the case is remitted to the Superior Court with direction to grant a new trial.

*George L. Cooke*, for plaintiffs.
*John W. Hogan, Philip S. Knauer*, for defendants.