## CHARLES J. KIMBALL *vs.* DAVID L. WITHINGTON.

Essex.   Nov. 5, 1885. — March 31, 1886.   FIELD & DEVENS, JJ., absent.

A., being seised in fee of a parcel of land containing twenty-five acres, on which there were two dwelling-houses, one of which had been assigned to his father's widow as her dower, conveyed one undivided half of the dower estate to B. Subsequently the guardian of A. presented to the Probate Court a petition setting forth that it was necessary to sell some part of a certain piece of land containing about twenty-five acres, with two dwelling-houses and other buildings thereon, one of the houses being occupied by the widow (naming her) as her dower, and that the ward was seised of one half of what she holds, and praying for a license to sell the whole estate of the ward. Upon this petition, license was granted to sell "the whole of the real estate of said ward." The deed of the guardian conveyed all the land, with a dwelling-house, barn, and other out-buildings thereon, "reserving the house occupied by" the widow, "with the privilege for the owners of said house to use the yard around said house equally with said grantee, also the privilege in the yard front of the barn, also reserving the shed with the land under it on the easterly end of the barn." The shed was not on the land set off to the widow as dower, though it was occupied by her. The notice of sale stated that the land contained about twenty-five acres, with a house, barn, and other out-buildings. *Held*, that A.'s undivided interest in the reversion of the dower estate did not pass by the guardian's deed.

PETITION, filed May 15, 1883, to the Superior Court, for partition of a parcel of land in West Newbury. The case was submitted to that court, and, after a judgment for the petitioner, to this court, on appeal, on agreed facts, in substance as follows:

Charles Kimball late of West Newbury, died intestate, seised of various parcels of real estate, among which was a certain piece of land of about twenty-five acres, on which were two dwelling-houses, a barn, shed, and other out-buildings. He left a widow, Lucy S. Kimball, and two sons, John R. Kimball and the petitioner.

To the widow was set off, on April 20, 1859, as part of her dower, one of said dwelling-houses, " with the privilege to it and around it to pass and repass as may be necessary in order to the full use and enjoyment of the same, and a right to the well by the house for water."

This dwelling-house and the land under the same is the property sought to be divided.

Dower was also set off in a twenty-three acre piece, excepting a shoe shop and blacksmith shop thereon, and in two other small pieces of land.

On June 24, 1859, John R. quitclaimed to Charles J. all the first-mentioned parcel, including the locus, and also the twenty-three acre piece, with the buildings thereon, both subject to the dower as set off.

On March 16, 1860, Charles J. quitclaimed to John R. all his right, title, and interest in one undivided half of the locus, subject to the dower as set off, " bounded and described as in the return of the committee to set off dower, which return is duly recorded, and to which reference may be had."

On March 17, 1863, the probate guardian of Charles J. presented to the Probate Court a petition, setting forth " that it is necessary to sell some part of a certain piece of land containing about twenty-five acres, with two dwelling-houses and other buildings thereon," (describing the whole lot,) " one of said houses being occupied by Lucy S. Kimball, held by her as dower, said ward being seised of one half of what she so holds," and praying for license to sell the whole of the real estate of said ward above described. Upon this petition, citation was issued setting forth that the petition had been presented for

license to sell " the whole of the real estate of said ward described in this petition;" and license was granted to sell " the whole of the real estate of said ward."

On May 8, 1863, said guardian under said license sold to one Chase all said first-mentioned parcel of land, " with a dwelling-house, barn, and other out-buildings thereon, . . . . reserving the house occupied by Mrs. Kimball, with the privilege for the owners of said house to use the yard around said house equally with said grantee, also the same privilege in the yard front of the barn, also reserving the shed with land under it on the easterly end of the barn with the hennery near it."

On March 24, 1865, the guardian made return to the Probate Court that he, being authorized " to make sale of the real estate of Charles J. Kimball . . . . for the purposes in the license set forth," gave notice by publication. The description in the notice is as follows : " A farm situated on the main road in West Newbury about one half-mile from Artichoke River and about the same distance from the church and school-house. The farm contains about twenty-five acres of good land, good house, barn, and other out-buildings. It was formerly owned by Charles Kimball and is now owned by his son Charles J. Kimball, and is about 4½ miles from Newburyport. For further particulars apply to Newell Ordway, guardian of Charles J. Kimball."

On September 11, 1869, Chase conveyed by description, if entitled to convey, to William S. McIntosh, all said parcel of land, including said house occupied by Mrs. Kimball and land under the same. Charles J., after the death of his father, lived in the house with his mother, Lucy S., for some time, and then moved into the other house, and lived there till the sale to Chase. He then moved back into the house with his mother, and has lived there ever since, he occupying one part and his mother the other part till the death of Lucy S., on April 1, 1881. The shed aforesaid was occupied by Charles J. and Lucy S. during her life, and up to the present time has been occupied by Charles J.

In 1871 said guardianship was terminated, and Charles J. became free and discharged therefrom.

John R. Kimball conveyed to the respondent, on December 26, 1882, the premises conveyed to him by deed of Charles J. Kimball dated March 16, 1860.

*D. L. Withington, pro se.*

*H. I. Bartlett,* for the petitioner.

W. ALLEN, J. The petitioner, being seised in fee of a parcel of land containing twenty-five acres, on which were two dwelling-houses, one of which had been assigned to his father's widow as dower, conveyed an undivided half of the reversion of the dower estate to his brother. Afterwards the probate guardian of the petitioner, by license of the Probate Court, sold and conveyed the land, with one dwelling-house thereon, "reserving" the house occupied by the widow. The question is, whether the reversion expectant on the dower estate passed by the deed.

The description of the land in the deed includes the locus; one dwelling-house is mentioned as conveyed, and the other, with certain privileges appurtenant to it, and a shed with the land under it, not included in the dower estate, are said to be reserved. The house, as set off to the widow in dower, included the land under it, and the same effect must be given to the words in the deed. The word "reserving" must be construed as "excepting," because the widow had a life estate in the house, which could not be reserved to the grantor, but only excepted out of the grant, and the reservation of the shed and the land under it could only operate as an exception, and not as a reservation. The exception of the house and shed includes the entire estate in the land under them, unless there is something to limit it to a lesser estate. It is said that the exception is of the dower estate, or of an estate for the life of the widow. The language of the deed does not point to this in regard to the house. The natural expression of that intention would be to except or reserve the widow's right of dower, as in *Canedy* v. *Marcy*, 13 Gray, 373, or to convey the residue of the whole estate not set off to the widow as her dower, as in *Kempton* v. *Swift*, 2 Met. 70. The same construction must be given to the language used as applied to the house and its appurtenances, and as applied to the shed and the land under it, and it would be a wholly unwarrantable construction to limit the exception of the latter, which did not belong to the dower estate, to an estate for the life of the widow.

No inference contrary to this can be drawn from the circumstances of the sale, so far as they are disclosed in the statement

of facts.   The guardian's petition for leave to sell alleged that it was necessary to sell part of the estate, and prayed for leave to sell the whole, and the license was to sell the whole of the real estate of the ward.   The property to be sold was described in the notice of sale as a farm containing twenty-five acres, a house, barn, and other buildings.   It mentioned but one house ; it did not mention any right of dower, or any reversion, or any undivided interest of the ward.   The ward had the entire interest in severalty in all but the house occupied by the widow and its appurtenances, and owned the reversion of that in common with his brother.   There is nothing disclosed to indicate any intention to sell the undivided interest in the reversion; and when, under these circumstances, a deed was given, making no mention of dower or reversion, and expressly reserving, not only the house with appurtenances occupied by the widow, in which she had a life estate and the petitioner and his brother the reversion, but also, by the same word, another building and the land under it, in which the petitioner had the entire estate, and speaking of the owners of the house, we cannot construe the deed otherwise than as excepting out of its operation the buildings and the land covered by them, so that no estate in that part of the premises would pass by it.   See *Gale* v. *Coburn*, 18 Pick. 397 ; *Stockwell* v. *Couillard*, 129 Mass. 231 ; *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196.                    *Judgment affirmed.*