CLARA M. KRONOFF *vs.* CITY OF WORCESTER.

SAME *vs.* SAME.

Worcester. September 29, 30, 1919. — December 15, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Deed,* Construction. *Evidence,* Presumptions and burden of proof. *Water Rights. Damages,* For property taken or damaged under statutory authority. *Words,* "Reservation," "Exceptions."

Whether the word "reservation" or the word "exception" in a deed shall be construed to mean a reservation or an exception depends upon the nature and effect of the provision in which the word is used.

At the hearing of a petition against a city for the assessment of damages resulting from a taking of water in a stream, the respondent contended that the water rights already had been given to a mill owner. The petitioner contended that the grant to the mill owner was of a revocable license only. *Held*, that the burden was on the petitioner of proving a clear title to the property, for the taking of which he was seeking damages, by a preponderance of the evidence only, and that he was not required to prove his title beyond a reasonable doubt.

The petition above described was referred to referees under an agreement of the parties that their findings of fact should be final. The referees found in substance that the petitioner's predecessor in title owned land on one side and to the thread of the stream only, that the owners of the land on the opposite side of the stream by a formal instrument had granted to the owner of a mill the right to erect a dam and flow their land, and that afterwards the dam was erected; that there was in evidence no such formal instrument of grant by the predecessors in title of the petitioner; that, in a succession of deeds of predecessors in title of the petitioner, the grantors "reserved" to the mill owner, either by identical language or by reference, "the right to the land where his dam stands and the right to flow a part of the described land with water perpetually by means of said dam;" that the deed to the petitioner was "subject to such rights and reservations as are mentioned and described in any of the aforesaid deeds, so far as they may apply to the property herein conveyed." *Held,* that the petitioner had not sustained the burden of proving a clear title by a fair preponderance of the evidence.

Two PETITIONS, filed in the Superior Court on August 10, 1914, for the assessment by a jury for damages resulting to the petitioner from the taking by the respondent of certain land, waters and water rights under Sts. 1900, c. 365; 1902, c. 351, for the purposes of its water supply.

In the Superior Court the petitions were referred to three referees under an agreement of the parties that the findings of fact by the referees should be final. The referees found as damages to the petitioner for the taking of two parcels of land, $1,900, and for all the damage suffered by her as riparian owner, $1,000. They also found that, if it should be ruled that the right of the mill owners in the old dam, described in the opinion, was revocable, the petitioner should recover $1,500 additional. They ruled that the right was not revocable. Other material findings of the referees are described in the opinion.

The cases afterwards were heard together by *Hammond, J.,* without a jury, upon the referees' report. At the hearing the petitioner asked the judge to rule as follows:

"1. Upon all the record the petitioner is entitled to a finding that the mill owners had only a revocable license to maintain the dam.

"2. Upon all the record the petitioner is entitled to a finding that the only rights of the mill owners in the said dam were as licensees under a license which was revocable at any time at the pleasure of the petitioner.

"3. Upon all the record the mill owners did not have a perpetual right to maintain and use the dam.

"4. Upon all the record the mill owners did not have a vested and permanent right to maintain said dam subject to a charge of an annual payment of $2 to the owners of the Kronoff land and $4 to the owners of the Battelle land.

"5. Upon all the record the petitioner is entitled to receive as damages on account of the taking of the water and water rights the further sum of $1,500, with interest from February 15, 1912, in addition to the award of $1,000 made in the . . . report."

The respondent asked for the following rulings:

"1. Upon the facts found by the referees the mill owners had an irrevocable right to maintain the dam and flow the land of the plaintiff.

"2. Upon the facts found by the referees the right of the mill owners to maintain the dam was not a revocable license, but was a permanent right or easement.

"3. Upon the facts found by the referees the plaintiff had no right to terminate or revoke the rights of the mill owners to maintain the dam.

"4. Upon the facts found by the referees the plaintiff is not entitled to recover 'on account of the taking of said water and water rights $1,500 additional to the award of $1,000' made for water rights.

"5. That Exhibit 9 [the instrument dated May 9, 1847, and executed by Hannah Battelle and Abigail Shumway, quoted in the opinion] be stricken out as irrelevant and incompetent evidence."

The judge denied all of the petitioner's requests for rulings, granted the respondent's fourth request, refused all of the other requests of the respondent as being inapplicable, and found for the petitioner in the sum of $2,900. The petitioner alleged exceptions.

*M. M. Taylor,* for the petitioner.

*J. W. Mawbey,* (*F. L. Riley* with him,) for the respondent.

CROSBY, J. These are two petitions to recover damages for the taking of certain land and water rights. The cases were referred to three referees by a judge of the Superior Court under a rule, agreed to by the parties, that the findings of fact of the referees should be final. They made a report and a supplementary report, both of which are annexed to and made a part of the bill of exceptions.

The cases were afterwards heard by a judge of the Superior Court, who filed a memorandum of decision and ruled that the petitioner was not entitled to recover for the taking of water and water rights the sum of $1,500 in addition to $1,000, the amount awarded by the referees.

The petitioner owned a farm in the town of Holden, through which ran the Asnebumskit Brook, so called. For a part of its course the petitioner owned the land on both sides of the brook. For another part of its course the thread of the stream was the dividing line between the petitioner's land on the south and land of other owners on the north, referred to in the record as the "Battelle land." In 1912 the respondent, acting under St. 1900, c. 365, and St. 1902, c. 351, took all the waters and water rights of the brook, and in 1914 and 1915, acting under the same statutes, it took in fee certain portions of the petitioner's land. After these takings, the city commenced the construction of a large dam upon that portion of the brook which ran between the petitioner's land and the Battelle land.

The referees found "that at some time between 1838 and 1848 one Le Baron Putnam and others, who were mill owners on the stream below, erected a dam upon the Asnebumskit Brook at a location upon that portion of the brook where it formed the dividing line between the Kronoff land and the Battelle land. This dam was for the purpose of making a storage reservoir for the benefit of the mills below." The exact time of the construction of the dam does not appear. The earliest documentary evidence is contained in a writing dated July 18, 1838, and is as follows: "To the Eagleville Mfg. Co., Gent: We hereby give you the privilege of bounding and butting a dam on our land in Holden adjoining land of Joseph Hubbard, we reserving the right of damage that may accrue in consequence thereof;" it was signed by John Battelle, Jr., and John Shumway. Joseph Hubbard, who was mentioned in this

writing, was at that time the owner of the land now owned by the petitioner; but, as he was not a party to it, it is clear that it authorized the building of the dam only upon that portion of the brook owned by Battelle and Shumway.

By an instrument under seal dated May 9, 1847, Hannah Battelle and Abigail Shumway (who are described as the "owners and tenants in common" of the land on the opposite side of the brook from that now owned by the petitioner), leased to Le Baron Putnam and his heirs and assigns the right to maintain the dam then existing "at its present height;" Putnam and his heirs and assigns agreed to pay the owners and their heirs and assigns a yearly rental of $4 therefor. He also covenanted that if Battelle and Shumway or their heirs and assigns, should pay to him or to his heirs and assigns the sum of $800, that he would relinquish his rights in the dam to them "and give good sufficient deed to effect the same." There is nothing to show that Battelle and Shumway or their successors in title ever attempted under this clause in the deed to acquire the rights of Putnam or his successors in title to the dam; and it is found that the rent payable under the agreement has been paid by the mill owners for more than sixty years.

On May 8, 1848, a written appraisal was made by referees of the damages "of flowage and taking gravel . . . on land of Messrs. Battelle and Shumway and Joseph Hubbard, by means of a certain dam erected by Le Baron Putnam and others;" Battelle and Shumway being awarded $3 to be paid annually forever as damages for flowing their land, and $5 for gravel taken to build the dam; Joseph Hubbard was awarded $2 to be paid annually forever, and $5 for gravel taken to build the dam; "all of said sums we award to be paid by the mill owners below or by said Le Baron Putnam during the continuance of flowing said land." When this award was made, Joseph Hubbard was the owner of the land now owned by the petitioner.

The first conveyance, thereafter, of the land now owned by the petitioner was in 1851 by the administrator of the estate of Joseph Hubbard; in 1865 by two quitclaim deeds the title passed to Cyrus Hubbard. No reference to water rights or easements is made in either of the above described deeds. The next conveyance of the land was in 1868 and was by warranty deed from Cyrus Hubbard to Luther G. Howard, which contained the following:

"However reserving to Alfred Morse, his heirs, and assigns the right to the land where his dam stands and the right to flow a part of the described land with water perpetually by means of said dam, the right to dig stone and gravel about said dam for its repairs and maintenance. Hereby reserving all lands or rights to said Morse his heirs and assigns which he or they may legally possess." At the date of this deed Alfred Morse was the owner, or one of the owners, of the mills below.

After the last described deed the title passed to successive owners by warranty deeds in 1869, 1875, and 1879, each containing the same reservation, either in the identical language or by reference to the deed from Hubbard to Howard.

On May 31, 1910, the property was conveyed by warranty deed to the petitioner and contained the following recital: "The premises aforesaid are hereby conveyed subject to such rights and reservations as are mentioned and described in any of the aforesaid deeds, so far as they may apply to the property herein conveyed."

Although there is nothing in the record before us of any instrument in writing from Joseph Hubbard or from any of the petitioner's predecessors in title conveying to Putnam or other mill owners the right to erect a dam and flow the land, yet the deed from Hubbard to Howard, given in 1868, refers to and recognizes such rights as existing in Alfred Morse, who at that time was a mill owner on the stream below the dam.

It is properly conceded by the respondent and assumed by the referees that the language in this deed did not create in Morse any title to the dam or rights to flow, as he was a stranger to the deed. *Stockwell* v. *Couillard,* 129 Mass. 231. *Murphy* v. *Lee,* 144 Mass. 371. *Haverhill Savings Bank* v. *Griffin,* 184 Mass. 419.

Whether the word "reservation" or "exception" in a deed is to be construed to mean a reservation or an exception depends upon the nature and effect of the provision itself. *Stockwell* v. *Couillard, supra. Kimball* v. *Withington,* 141 Mass. 376.

It is plain that the clause in the deed from Hubbard to Howard was not a reservation by the grantor of something in himself not in existence before, out of the granted premises, but that the purpose of the parties was to recognize and except from the grant the rights of Morse therein described; it therefore operated as an exception, although to be valid as such it must appear that the

rights of the mill owners to maintain the dam were actually in existence at the date of the deed. *Wood* v. *Boyd,* 145 Mass. 176. *Haverhill Savings Bank* v. *Griffin, supra.*

In the three quitclaim deeds in the petitioner's chain of title, no reference is made to the dam or to flowage rights; while all the deeds beginning with the deed from Cyrus Hubbard to Luther G. Howard, including the deed to the petitioner, recognized the mill owners' rights either in express terms or by reference.

The memorandum of decision filed by the judge of the Superior Court consists merely of a ruling of law with a statement of the reasons which led him to make that ruling. It does not purport to contain any findings of fact although certain facts are recited therein from the report of the referees. He had no power to find any facts but could only decide the case on the report of the referees. The question for this court to decide is whether as matter of law the petitioner sustained the burden of showing an unencumbered title to the land in question. The rule to the referees provided that the findings of fact made by them should be "final, conclusive and binding upon the parties" and our decision must be made on their findings. The general finding of the referees, so far as it is a question of fact is, that the petitioner has not sustained the burden of proving a clear title. On this issue they found in favor of the respondent by finding for the smaller sum. They further found that "if it shall be held that the right of the mill owners in the old dam was only a revocable license, then we find that the petitioner is entitled to receive as damages on account of the taking of said water and water rights the further sum:" that is to say, unless on the facts found as matter of law the right of the mill owners was only a revocable license, then their general finding is to stand.

The petitioner was bound to prove by a fair preponderance of the evidence her contention that her land was subject only to a revocable license.

The intimation of the judge of the Superior Court that the burden rested on the petitioner to prove that she had a clear title beyond a reasonable doubt was error. The ordinary rule as to burden of proof in civil cases prevails in the case at bar, but the error of the judge does not affect the result which we reach. It is plain that he did not adopt that rule in deciding the case

because he stated "It is incumbent upon the petitioner to make out at least by the fair weight of the evidence that she had the unencumbered title to this land."

We are of opinion that it cannot be said as matter of law that the petitioner sustained her burden of proof. The evidence respecting the nature of the right of the mill owners was such that it could not have been ruled either that they had an irrevocable right to maintain the dam or that they had no such right. It follows that we cannot say the conclusion of the referees that the petitioner had not shown a clear title was erroneous as matter of law. It does not appear that they proceeded on any erroneous view of the law in making their findings of fact. Considering the facts as found in their aspect most favorable to the petitioner, they do not establish an unencumbered title in the fee in her, and they do not establish that the nature of the mill owners' occupation was nothing more than a revocable license. The contention that they had a vested and permanent right is as consistent with all the facts found as that they had no such right and were mere licensees. The petitioner therefore fails to sustain her burden of proof.

There was no error of law in denying the petitioner's requests for rulings or in granting the respondent's fourth request. The exceptions taken to the exclusion of evidence have become immaterial in view of the conclusion reached.

*Exceptions overruled.*