FRANK ALBANO & another *vs.* ANGELO PUOPOLO & others.

Suffolk.     April 8, 1941. — September 8, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Prescription.* *Way,* Private: creation, extinguishment, obstruction, enforcement of easement. *Equity Jurisdiction,* Laches, To enjoin infringement of easement. *Equity Pleading and Practice,* Injunction.

Findings by a master that over a period of some fifty years deeds of one of two adjoining lots contained recitals that it was subject to a right to the use of a passageway across it in favor of the other lot, and that deeds of the second lot over the same period contained recitals that such right was included in the several conveyances, together with findings as to the physical condition of the lots over the period and findings that the owners of the second lot had continuously used the passageway under a claim of right for at least fourteen years before the owner of the first lot prevented such use and that for more than twenty years before such prevention the passageway was "kept closed and locked" "except when being used for a passing," although not showing any right of passage by grant, made proper inferences that such use by the owners of the second lot had been continuous for more than twenty years before prevention and that they had acquired a right of passage by prescription.

A right of way acquired by prescription was not lost by being barred for only six years by the owner of the servient estate.

Mere delay for more than six years by the owner of a right of way in bringing a suit in equity to enjoin its obstruction did not bar the suit

on the ground of laches if the defendant had not changed his position and was not otherwise prejudiced by the delay.

In a suit in equity to enjoin obstruction of a right of way over property owned by tenants in common, no damage to the plaintiff appearing, the bill should have been dismissed as against certain of the tenants who had conveyed their interests to their cotenants after the obstruction began but before the bill was filed.

BILL IN EQUITY, filed in the Superior Court on October 16, 1939.

The decrees were entered after hearing on the master's report by *F. T. Hammond*, J.

*S. R. Wrightington*, (*M. I. Connolly* with him,) for the defendants.

No argument nor brief for the plaintiffs.

Cox, J. This is a bill in equity seeking to restrain the defendants from interfering with the alleged rights of the plaintiffs in the use of a passageway described in a deed to the plaintiffs. The bill alleges that this passageway, two and one half feet wide, leading from the plaintiffs' premises, is in the rear of the premises claimed to be owned by the "defendant" and leads "to a larger passageway"; that the plaintiffs' right to the use of the passageway is a matter of record, as set forth in a plan dated May 14, 1887, and recorded with the registry of deeds. The suit was referred to a master, whose report was confirmed by interlocutory decree in which the defendants' exceptions were overruled. The trial judge filed a "Memorandum and Order for Decree," and a final decree was entered affording the plaintiffs relief against all defendants. The defendants appealed from both decrees.

From the master's report it appears that the premises are located at numbers 18 and 20 Cooper Street in Boston. The defendants' parcel, so called, hereinafter referred to as lot 18, is bounded on the east by a passageway, fronts on Cooper Street and is bounded on the west by the plaintiffs' parcel, hereinafter referred to as lot 20. By deed dated and recorded on May 10, 1887, lot 18 was conveyed to one Baker. No evidence of the record title of either lot prior to this date was introduced. The deed contained no reference

to any plan, nor to any two and one half foot passageway.
By deed dated May 16, 1887, said Baker conveyed lot 18
to one Connolly.   Reference therein was made to the deed
of May 10, 1887, and the conveyance was "subject to the
right of the owners of . . . [lot 20] to pass and repass over
and drain under the passageway 2.50 feet wide across the
Southerly end of the described premises. . . . The grantee
her heirs and assigns may arch over said passageway 2.50
feet wide leaving the same eight (8) feet high from its
present surface to the top of such arch or however otherwise
bounded, measured or described . . . ."   The plan therein
referred to is dated May 14, 1887, and shows a passageway
at the southerly end of lot 18 marked "passageway 2½ feet
wide to No. 20."   By deed dated May 25, 1887, lot 20, "as
shown on . . . [said] plan," was conveyed to the said
Baker, together "with a right of way in the passageway
two and one-half (2½) feet wide across the rear of . . .
[lot 18] as shown on said plan . . . ."   Baker conveyed lot
20 on June 16, 1887, together "With a right of way in the
passageway two and one half . . . feet wide across the rear
of . . . [lot 18] as shown on said plan," and by mesne
conveyances said lot 20 was eventually conveyed to the
plaintiffs "with the right of way . . . as shown on said
plan."   In several mesne conveyances of lot 20 there are
similar recitals, in substance, that each is made with the
right of way as shown on said plan.

In the several mesne conveyances of lot 18, including that
to the defendants' father, from whom they derive title, there
are recitals similar in every material respect to those con-
tained in the deed from Baker to Connolly, that is, that lot
18 is subject to the rights of the owners of lot 20 in the pas-
sageway therein described.   The defendants' father owned
lot 18 until his death in 1933, and his children, the defend-
ants, continued to own it as tenants in common until June,
1939, when Angelo, Lucy (Lucia), Nicholas (Nicola) and
Amelio (Milio) conveyed their interests in said lot 18 to the
other four children.   In their deed and in a mortgage there-
after by the grantees it is stated, in effect, that the convey-
ances are subject to the right of the owner of lot 20 in the

passageway. The four children who conveyed, as aforesaid, had no title or interest in lot 18 at the time the bill in equity was filed on October 16, 1939.

In 1887, when lot 18 was purchased by Connolly, the building on it, which covered its entire frontage, had a wooden ell in the rear, not more than one third as wide as the main building, which extended to the rear of the lot along the boundary of lot 20. Along the rear or southerly end of lot 18 there was a dark passageway at least two and one half feet wide, to which there was access from lot 20; "there was an opening there." This passageway led to a wider, open one that extended along the easterly line of lot 18 to Cooper Street, and at this end of the dark passageway there was a door with a latch on the inside. The remainder of the rear part of lot 18 was an open yard covered with brick, with a fence along the wider, open passageway. At that time there was a similar building on lot 20 except that it did not cover the entire frontage, there being an open passageway three or four feet wide between the building and the adjoining lot to the west. The building now on lot 20 was constructed in 1893 and covers the entire frontage. The building on lot 18 was constructed in 1896–1897 and covers the entire lot, but there is still, as a definite physical fact, "a passageway along and across the rear and most southerly end of . . . [lot 18] at least two and one half feet wide, in the same place and very much the same as it was in 1887 when . . . [said] Connolly first made her home" there, except that at the present time, it is covered over by the brick building that was built in 1896–1897 and is contained within that building. The height from the surface of the ground to the roof of said passageway is about eight feet. There are walls or partitions on each side, and in the northerly wall there is a door leading down into the cellar of the building, the said passageway being on a distinctly higher level than the cellar. At the end of the passageway nearest to lot 20 there is a door leading to an area, "in the nature of an air-shaft," five to six feet square and all upon lot 18. On the opposite side of the air shaft there is a door at the boundary line of lot 20 leading into the premises there. At the other end of the

passageway there are four or five steps leading to a door which opens on the wider, open passageway leading to Cooper Street.

In the deed from Baker to Connolly, the southerly bound is "on the Northerly face of a brick wall standing on other land of said Baker," and the westerly bound is "by Estate No. 20 Cooper Street as shown on said plan by a line through the middle of the brick partition wall." The plan shows double lines beginning at Cooper Street and extending south about one half the length of the lots, with the notation, "Centre of wall." Continuous double lines are shown at the south line of both lots, with the notation above the line nearest the lots, "Face of Wall."

From at least 1919 until the death of the defendants' father, the passageway in question was "continuously used from time to time under a claim of right by the owner, or owners of . . . [lot 20] and their tenants" for purposes of travel and removal of things, "subject expressly, however, to the door at the end of said passageway nearest . . . [lot 20] being kept closed on the inside by a wooden button or peg as of right by the owner or owners of . . . [lot 18], and to the door at the other end of said passageway leading out into said wider, open passageway being kept locked with an ordinary lock and key as of right by the owner or owners of . . . [lot 18], with reasonable access to and right to use said key, or any duplicate or duplicates thereof, at all reasonable times on the part of the owner or owners . . . of . . . [lot 20], for the purposes of passing, repassing and carrying or taking things in and out as aforesaid . . . ."

The master further found that for a period of more than twenty years prior to the death of the defendants' father in 1933, this passageway "except when being used for passing and repassing thereon, was kept closed and locked from the inside by a door with a button or peg at the end nearest to . . . [lot 20] and on the other side by a door with a lock and key by the owner or owners from time to time of . . . [lot 18], and that such closing and locking was not permissive on the part of the owner or owners for the time being of . . . [lot 20] but adverse to them."

From the facts found as to the physical condition of the premises beginning in 1887, the use made of the passageway from "at least 1919" and its being kept closed, all as hereinbefore described, the master inferred that for a period "long prior to 1919, and at least for more than twenty years prior to 1933, it had been continuously used from time to time under a claim of right" by the owners of lot 20 and their tenants for the purposes hereinbefore stated, and subject to its doors being kept closed and fastened, all as hereinbefore set out.

Shortly after the death of the defendants' father, the plaintiffs were refused access to the passageway by the defendants. The doors have been kept locked and barred, but the plaintiffs have not abandoned the passageway or any of their rights therein, and have not pressed the matter further before the bringing of the bill in order to "avoid any altercation over the same." The master was unable to determine what damage, if any, the plaintiffs had sustained. There is no report of any evidence.

The trial judge ruled that the language in the deed of May 16, 1887, from said Baker to said Connolly, to the effect that the conveyance was "subject to the right of the owners . . . [of lot 20] to pass and repass over and drain under the passageway . . ." in question, cannot be construed as constituting an exception from the grant, citing *Wood* v. *Boyd*, 145 Mass. 176, 179, *Haverhill Savings Bank* v. *Griffin*, 184 Mass. 419, and *Kronoff* v. *Worcester*, 234 Mass. 254, 259–260, nor as a reservation of a right of way for the benefit of lot 20, citing *Murphy* v. *Lee*, 144 Mass. 371, 374, and *S. K. Edwards Hall Co.* v. *Dresser*, 168 Mass. 136, 138. Accordingly, he ruled that there was no proof of any deed granting a right of way over lot 18. The plaintiffs did not appeal.

The final decree, in defining the rights of the plaintiffs, uses almost word for word the language of the master in his findings as to the use of the passageway from 1919 to 1933, and makes those rights expressly subject to the conditions therein set out as to the doors being kept locked and barred. The burden was on the plaintiffs to establish any rights

founded upon adverse user. *Smith* v. *Porter*, 10 Gray, 66, 68. *McFarlin* v. *Essex Co.* 10 Cush. 304, 311. We have before us all the subsidiary facts that were found by the master, and it is our duty to draw such inferences as, in our opinion, are proper. *Robinson* v. *Pero*, 272 Mass. 482, 484.

We are of opinion that except for modifications of the final decree, hereinafter referred to, there was no error. In 1887, when said Connolly became the owner of lot 18, there was already in existence the "dark passageway" along the rear and most southerly end of the lot. It is apparent that the westerly portion of this passageway must have been within the confines of the wooden ell that extended to the rear of the lot. The remainder of the rear part of lot 18 was an open yard covered with brick with a fence along its easterly boundary adjoining the open passageway which led to Cooper Street. The south side of the passageway was the "face of a brick wall." The master found that "from at least" 1919 until the death of the defendants' father in June, 1933, this passageway was used continuously under a claim of right by the owner or owners of lot 20 and their tenants, subject to the doors at either end being kept locked "with reasonable access to and right to use . . . [the] key, or any duplicate or duplicates thereof, at all reasonable times on the part of the owner or owners from time to time" of lot 20. But the master also found that for a period of more than twenty years prior to the death of the defendants' father, this passageway, "except when being used for passing and repassing thereon," was kept closed and locked as hereinbefore described, and that such closing and locking was not permissive "on the part of the owner or owners for the time being" of lot 20, but adverse to them. It is not entirely clear from the report of the master whether the phrase "except when being used for passing and repassing thereon" refers to his previous finding of the use of the passageway "from at least 1919." But it is clear that "such closing and locking" was not permissive on the part of the owner or owners "for the time being" of lot 20. We think it is a proper inference that the phrase

"except when being used for passing and repassing thereon" refers to the use of the passageway by the owners of lot 20. It is of some significance that in 1893 the present building on lot 20 was constructed, that it covered the entire front of the lot and that since the closing of the passageway in 1933 to the owners of lot 20, they have been obliged to remove ashes and rubbish either through a store in the building or up a rear stairway and through the front door of the building on Cooper Street.

It is not unreasonable to assume, from an examination of the deeds of the two lots in question and the plan, see *Dubinsky* v. *Cama*, 261 Mass. 47, 53, and cases cited, *Walker* v. *E. William & Merrill C. Nutting, Inc.* 302 Mass. 535, 539, 540, that Bartlett, a grantor, and Baker, the grantee, in 1887 intended that the owner of lot 20 should have rights of passage and drainage in the passageway as described in the deed and shown on the plan. Baker acquired lot 18 on May 10, 1887. One of his grantors was the said Bartlett. It appears that a Bartlett of the same Christian name, although described as having a different residence from that of the grantor Bartlett in the deed of lot 18, conveyed lot 20 to said Baker on May 26, 1887. It is to be recalled that, in the deed of lot 18 to Baker, there is no reference to any two and one half foot passageway. The plan is dated May 14, 1887, and is referred to in Baker's deed of lot 18 of May 16, 1887, "to be recorded." It was, in fact, recorded in the record book prior to the book in which the deed from Baker to Connolly is recorded. When Bartlett conveyed lot 20 to Baker on May 26, 1887, it is described as shown on the plan in question, and the deed purports to convey a right of way in the passageway. Baker's transactions in connection with these two lots, in so far as disclosed by the record, begin on May 10, 1887, and end on June 16, 1887, when he conveyed lot 20. But it does not seem unreasonable to infer from the findings of the master, that the passageway was already in existence, and that it then was being used by the owners of lot 20. Even if the attempt on the part of Bartlett and Baker to create rights in the passageway by deed was of no avail, as

was ruled by the trial judge, it appears that in all of the deeds of lot 18 in the chain of title from said Connolly there was a recital of the right of the owners of lot 20 to use the passageway, as hereinbefore described.

Admissions by an owner of land against his interest and in disparagement of his title, made contemporaneously with his possession and enjoyment of the premises, are admissible in evidence against the maker and his privies. *Blake* v. *Everett,* 1 Allen, 248. *Chapman* v. *Edmands,* 3 Allen, 512, 514. *Rowell* v. *Doggett,* 143 Mass. 483, 488. *Reed* v. *Mayo,* 220 Mass. 565, 567. *Ford* v. *Grey,* 1 Salk. 285 (91 Eng. Rep. R. 253). See *Hale* v. *Silloway,* 1 Allen, 21, 22; *Abbott* v. *Walker,* 204 Mass. 71, 73, and cases cited. It is true that in the case at bar the recitals in question in the deeds of lot 18 do not amount to estoppel. But, nevertheless, they are evidence which, taken in connection with the other findings in the case, lead us to the conclusion that the plaintiffs have a limited right of passage in the way that is not only physically defined, but is also so referred to in the several deeds.

The defendants contend that the plaintiffs are barred by laches. Laches is not pleaded. *Adamowicz* v. *Iwanicki,* 286 Mass. 453, 458. See *Stewart* v. *Joyce,* 201 Mass. 301, 307. The master found that the plaintiffs have not abandoned any rights in the passageway; that from time to time they have strenuously objected to the obstruction of the passageway but had not "pressed the matter further until the bringing of the bill of complaint herein in order to avoid any altercation over the same." If it be assumed that the question of laches is open, we are, nevertheless, of the opinion that the plaintiffs are entitled to prevail. An injunction against the obstruction of a right of way is the usual remedy invoked by the owner of such a legal easement. *Bailey* v. *Agawam National Bank,* 190 Mass. 20, 24. *Ball* v. *Allen,* 216 Mass. 469, 472. See *Parker* v. *Nightingale,* 6 Allen, 341, 345. It having been established to our satisfaction that a right of passage had been acquired prior to 1933 by the owners of lot 20, the facts found bring the case within the rule that where there is a continuing interference with the

plaintiffs' right of passage, a case is presented for equitable relief. *Driscoll* v. *Smith*, 184 Mass. 221, 223. It is true that the bill in the case at bar was not brought until more than six years after the defendants effectively obstructed the passageway. But in view of our conclusion that a limited right to use the passageway had accrued to the owners of lot 20 when the defendants closed it to them, this closing has not continued long enough to extinguish the easement. *Jennison* v. *Walker*, 11 Gray, 423, 425, 426. *Wells* v. *New Haven & Northampton Co.* 151 Mass. 46, 49–50. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288. See *Chandler* v. *Jamaica Pond Aqueduct Corp.* 125 Mass. 544, 549; *Smith* v. *Langewald*, 140 Mass. 205, 207; *Ball* v. *Allen*, 216 Mass. 469, 472, 473; *Longton* v. *Stedman*, 196 Mich. 543; *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 300–301. The case at bar is not one in which the plaintiffs have stood by without objection and permitted the defendants to erect buildings or incur liabilities. It does not appear that the defendants were induced to change their position or that their rights were affected by failure to bring the suit at an earlier date, nor is there any evidence of omission or commission on the plaintiffs' part prejudicial to the rights of the defendants. *Cohen* v. *Bailly*, 266 Mass. 39, 49. *Carter* v. *Sullivan*, 281 Mass. 217, 227. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288, 290–291. See *Starkie* v. *Richmond*, 155 Mass. 188, 195–196.

As already appears, four of the defendants had conveyed their interests in lot 18 before this bill was brought. But from June, 1939, until the filing of the bill, the four defendants who acquired the titles of the other four, and from the death of their father until June 10, 1939, "all of the defendants herein, have kept the doors of said passageway closed and have refused access thereto to the plaintiffs." The master was unable to determine what damage, if any, the plaintiffs had sustained. It is apparent that the four defendants who conveyed their interests in lot 18 to their brothers and sisters had discontinued their parts in the wrongful obstruction of the passageway prior to the bring-

ing of this bill. In view of these findings, we are of opinion that the plaintiffs are entitled to no injunctive relief against the four defendants who had conveyed their interests, and that the bill should be dismissed as to them with costs. It is to be observed again that the plaintiffs did not appeal from the final decree which awarded no damages to them.

We have examined the defendants' exceptions to the master's report and find no reversible error in the interlocutory decree overruling them.

It is true that the plaintiffs have not established rights in the passageway by virtue of any grant as alleged in their bill. It is elementary that a decree in equity must conform to the frame of the bill. *Gamwell* v. *Bigley*, 253 Mass. 378, 380. But the facts found by the master disclose that the plaintiffs have acquired rights in the passageway by prescription, and it appears that that issue was tried. It ought not to be tried again. The plaintiffs are given leave to amend within thirty days after rescript for the purpose of presenting formally on the record the issue that was, in fact, tried. *Weinstein* v. *Miller*, 249 Mass. 516, 522. *Blume* v. *Oil-O-Chron, Inc.* 287 Mass. 52, 54. See *Farinha* v. *Commissioner of Banks*, 303 Mass. 192, 195.

The final decree enjoins the defendants from preventing the plaintiffs from using the passageway in question "to or from Cooper Street or Bartlett Place over said wider, open passageway . . . ." There is nothing in the record to justify the inclusion of these words in the decree.

If the amendment is not filed, the entry will be, decree reversed, bill dismissed with costs; if the amendment is filed, the entry will be, interlocutory decree affirmed, final decree, except as modified in accordance with this opinion, affirmed with costs.

*Ordered accordingly.*